MONTGOMERY, MCCRACKEN, WALKER & RHOADS, LLP
(A Limited Liability Partnership formed in Pennsylvania)
By: John J. Levy (037201984)
LibertyView, Suite 600
457 Haddonfield Road
Cherry Hill, New Jersey 08002
(856) 488-7700
ATTORNEYS FOR WILLING'S GROUP INC. and MAY LABS LLC

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| WILLING'S GROUP INC. and MAY LABS LLC, | : | Civil Action No. 16-4479 (NLH/KMW) |
| Plaintiffs, | : : : | |
| v. | : : | **FIRST AMENDED COMPLAINT** |
| | : | **JURY TRIAL DEMANDED** |
| M. MAIMUL ALAM and RIDDHI USA, INC., | : : | |
| Defendants. | : | |

**FIRST AMENDED COMPLAINT**

Plaintiffs Willing's Group Inc. and May Labs LLC bring this Amended Complaint against M. Maimul Alam and Riddhi USA, Inc. based upon the following:

**INTRODUCTORY STATEMENT**

1. This action concerns a fraudulent scheme by the Defendants to entice a business owner into investing in a bogus joint venture, the end result of which was the business owner lost hundreds of thousands of dollars.

2. In 2007, Carol Chen ("Chen") started Willing's Group, Inc., a company located in Cherry Hill, New Jersey that packages nutritional supplements. Through her work with

Willing's Group, Chen met M. Maimul Alam ("Alam"). Alam claimed to own a company called Vitanet, and Chen purchased capsules from Vitanet and bottled them in her facility. Alam also owned and operated Riddhi USA, Inc. ("Riddhi"), a New York company that sells equipment used to manufacture nutritional supplements. Alam knew that Chen owned a nutritional supplement packaging company. In 2013, Alam asked Chen to borrow $200,000 because he needed money to buy equipment for his facility. Chen told Alam she was unable to lend him money. A few months later, Alam approached Chen to propose a joint venture. Alam represented to Chen that she would earn substantial sums and higher profits if she not only packaged vitamins and food supplements, but also manufactured them in her facility in Cherry Hill. Alam made other representations to Chen, including the promise that he would to go into business with her and that he would contribute his expertise and industry knowledge in manufacturing to ensure the business would succeed. He also promised to provide in-person consulting two days a week at Chen's Cherry Hill facility and to help her obtain new clients. Alam also represented that if Chen gave him $600,000, he would procure all the equipment she needed to start manufacturing. Chen accepted Alam's representations and, at Alam's direction, began to pay substantial sums of money to his New York company, Riddhi, to acquire the necessary equipment to start the business. However, instead of providing useful, working equipment, Alam sold Chen dilapidated equipment that was not fit for the intended purpose of manufacturing high-quality nutritional supplements that could be produced and sold profitably. In addition, Chen paid for other necessary equipment, but Alam never delivered it. Alam also did not provide adequate or sufficient expertise or industry knowledge as he had promised and may not have had such expertise from the outset. He also did not provide in-person consulting two days per week or help her obtain new clients as he had promised. As a direct result of

Alam's false representations and unfulfilled promises, Chen has never been able to run a profitable manufacturing business in her facility and has lost a substantial amount of money. In addition, Plaintiff May Labs gave personal loans to Alam, which he has failed to repay.

## PARTIES

3. Plaintiff Willing's Group Inc. is a corporation organized under the laws of the State of New Jersey, with its principal place of business at 1936 Olney Ave., Cherry Hill, New Jersey 08003.

4. Plaintiff May Labs LLC is a limited liability company organized under the laws of the State of New Jersey and the sole member of the LLC, Carol Chen, is a citizen of New Jersey.

5. Defendant M. Maimul Alam is a citizen of New York, residing at 6112 182nd Street, Fresh Meadows, New York 11365.

6. Defendant Riddhi USA, Inc. is a corporation organized under the laws of the State of New York, with its principal place of business at 2231 5th Avenue, Suite 28, Ronkonkoma, NY 11779-6284.

## JURISDICTION AND VENUE

7. Jurisdiction is appropriate in this matter under 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000, exclusive of interests and costs, and is between the citizens of different states.

8. Venue is appropriate in this District Court pursuant to 28 U.S.C. § 1391(b)(2). A substantial part of the events giving rise to this claim occurred in New Jersey and Plaintiffs operate out of Cherry Hill, New Jersey.

## FACTS

9. Carol Chen ("Chen") started a nutritional packaging company, Willing's Group Inc., in Cherry Hill, New Jersey in 2007. A true and correct copy of the Willing's Group Inc. Certificate of Incorporation is attached as **Exhibit A**.

10. In the course of her regular business operations, Chen met Mohd Mainul Alam ("Alam"), who worked in manufacturing of nutritional supplements. Alam claimed to own a company called Vitanet, and Chen purchased capsules from Vitanet and bottled them in her facility.

11. Alam also owned Riddhi USA, Inc., a corporation formed in 2009 in New York. Attached hereto as **Exhibit B** is a true and correct copy of the Certificate of Incorporation of Riddhi USA, Inc.

12. Vitanet was purportedly purchased by Piping Rock Health Products in 2012. Alam told Chen that he agreed to work for Piping Rock for two years as a consultant but left after one year.

13. After he left Piping Rock in 2013, Alam asked Chen to borrow $200,000 because he needed money to buy equipment for his facility. Chen told Alam she was unable to lend him money.

14. A few months later, Alam approached Chen about manufacturing and distributing certain health care/nutritional products that Plaintiffs were not then currently producing, distributing, and/or packing.

15. Alam knew Chen owned a packaging facility.

16. Alam proposed that they start a joint venture, splitting the ownership 60/40.

17. Alam suggested that Chen would own the majority share and fund the joint venture, and he would contribute his industry knowledge and expertise, which he represented was necessary to start the business and operate it profitably. He also represented that he would help Chen obtain new clients. He committed to Chen that he would provide in-person consulting two days a week in Cherry Hill, and also procure the necessary manufacturing equipment.

18. Chen was led to believe that Alam was able to procure equipment at a steeply discounted price because Riddhi USA, Inc. was a distributor.

19. To entice Chen into giving him substantial amounts of money, Alam prepared a handwritten budget sheet on which he identified the equipment he claimed Chen would need in order to start the manufacturing business. The budget sheet confirms that Alam proposed that Chen give him almost $600,000 to buy equipment. Attached hereto as **Exhibit C** is a true and correct copy of the budget sheet that Alam prepared.

20. Chen requested that Alam create some sort of written documentation to memorialize their business relationship, and Alam agreed to do so. Alam drafted and gave to Chen a proposed agreement for their business relationship, but they never signed this proposal or agreed to its terms. Attached hereto as **Exhibit D** is a true and correct copy of the proposed,

unsigned agreement drafted by Alam. Alam then represented to Chen that he did not want his name on the documents forming May Labs, claiming that he was going through a divorce and did not want to reveal to his wife his interest in May Labs, LLC.

21. Chen thereafter formed "May Labs, LLC" on February 20, 2014, with Chen as the sole member of the limited liability company. Chen operated May Labs LLC out of her existing packaging facility, Willing's Group. Attached hereto as **Exhibit E** is a true and correct copy of the Certificate of Formation of May Labs, LLC.

22. Willing's Group began paying Riddhi USA, Inc. substantial sums of money. Attached hereto as **Exhibit F** are true and correct copies of three checks Chen wrote from Willing's Group to Riddhi USA, Inc. in the amounts of $100,000, $100,000 and $50,000 to procure equipment.

23. Willing's Group also paid Riddhi USA, Inc. over $31,000 in commissions for procuring equipment for May Labs.

24. Despite these substantial sums, the equipment Alam delivered was not fit for the intended purpose of manufacturing high-quality nutritional supplements that could be produced and sold profitably. Alam represented to Chen that he would be acquiring the equipment from third parties, but in fact, some of it was already owned by Alam. Alam also refused to give Chen receipts for the equipment he supposedly bought from third parties.

25. Alam failed to deliver $192,000 worth of equipment:

    a. Two automatic encapsulators ($60,000 each);

    b. FTIR testing machine ($22,000);

      c.      HPLC equipment ($50,000); and,

      d.      Miscellaneous labware.

26.    On one occasion, Alam told Chen he needed $50,000 as a deposit on two capsule machines for May Labs, which she paid him, but he never delivered them to her.

27.    On another occasion, Alam represented to Chen that he needed a $150,000 advance because he was going to an auction to buy used equipment for May Labs. Chen transferred Alam the money. In return, Alam delivered one "HPLC" machine to her, worth approximately $8,000. He never refunded the difference.

28.    Chen asked for, but never received, original invoices for the equipment she purchased from Alam.

29.    As a result, May Labs LLC never had, and still does not have, the necessary equipment to perform manufacturing.

30.    Alam also failed to provide adequate industry knowledge and in-person consulting.

31.    Alam represented to Chen that he needed an apartment to stay in while he was working in Cherry Hill to set up the manufacturing business for her. Relying upon Alam's representations that he would help her start a manufacturing business, May Labs leased an apartment for $700/month in Stratford, New Jersey for Alam to use while he was working in Cherry Hill.

32. Chen's reliance upon Alam's representations was reasonable. Chen and Alam had a professional relationship for several years and Alam described himself to be very knowledgeable in this manufacturing industry.

33. Alam rarely came to perform consulting work for more than one-half day per week and would often claim to be ill. When Alam did come to the Cherry Hill facility he was verbally abusive to Chen's employees. The money expended for renting the apartment is part of Plaintiffs' claim for damages.

34. When Alam was not in Cherry Hill, he was operating his own business, Riddhi USA Inc., in New York.

35. Alam also solicited personal loans from Chen, which she gave him and were written from May Lab's checking account. He has not paid back May Labs. Chen wrote checks to Alam from May Labs totaling approximately $5,000, which were personal loans. That debt is still outstanding and is part of the damages Plaintiffs seek.

36. Additionally, instead of helping Chen obtain new customers as promised, Riddhi USA, Inc. stole existing customers from Willing's Group. As one example, from his time consulting at the Willing's Group facility, Alam came to learn that Lag Global Trading was a Willing's Group customer. Lag Global Trading owed Willing's Group $15,000 for products already delivered. Alam went to the Lag Global Trading facility in person and persuaded Lag Global Trading to buy products from Riddhi USA, Inc. instead. As a result, Willing's Group lost Lag Global Trading as a customer and never received the $15,000 final payment it was owed.

37. Alam also stole Willing's Group clients GoldLife and Maxus Worldwide

Nutrition.

38.     Alam also took from the Cherry Hill facility tooling equipment that Willing's Group had purchased for May Labs.  Specifically, Alam took "tooling kits" from Chen's facility to use at Riddhi USA, Inc. in his New York facility.  Alam took the tooling kits, without authorization from Chen, so he could use them in his own business in New York.

39.     Chen visited Alam's Riddhi USA, Inc. facility in New York on May 12, 2016 to retrieve the tooling kits Alam had taken.  When she arrived she was let in by a worker.  She found one tooling machine that she believed to be hers and put it in the trunk of her car.

40.     When Alam arrived and learned that Chen had taken one of the tooling machines, he threatened to have her arrested.  He called the police, who arrived shortly thereafter.  When Chen showed Alam the machine was hers, he backed down on his threats to have her arrested and told the police the matter was resolved. Alam then "found" another tooling machine at his facility that belonged to May Labs LLC and gave it to Chen before she left.

41.     May Labs LLC has never made a profit as a direct result of Chen's reliance upon the false representations of Alam and the acts and omissions of Alam and Riddhi.

## COUNT I

### Fraud and Deceit

42.     The preceding and succeeding paragraphs are incorporated herein by reference as if set forth at length.

43.     Alam represented to Chen that he would help her start a profitable business manufacturing nutritional supplements.  In exchange for substantial amounts of money, Alam agreed to procure manufacturing equipment for May Labs.  Alam represented to Chen that he was able to obtain the necessary manufacturing equipment at steeply discounted prices because he was a distributor, and that the manufacturing equipment he procured would be reasonably fit its intended purposes.

44.     Alam also represented that he would help Chen obtain new clients.

45.     To entice Chen into giving him substantial amounts of money, Alam prepared a handwritten budget sheet on which he identified the equipment he claimed Chen would need in order to start the manufacturing business.   The budget sheet confirms that Alam proposed that Chen give him almost $600,000 to buy equipment. Attached hereto as **Exhibit C** is a true and correct copy of the budget sheet that Alam prepared.

46.     Despite these substantial sums paid, the equipment Alam delivered was not fit for the intended purpose of manufacturing high-quality nutritional supplements that could be produced and sold profitably.  Alam represented to Chen that he would be acquiring the equipment from third parties, but in fact, some of it was already owned by Alam, resulting in Willing's Labs overpaying for that equipment.  Alam also refused to give Chen receipts for the equipment he supposedly bought from third parties.

47.     Alam failed to deliver $192,000 worth of equipment:

   a.     Two automatic encapsulators ($60,000 each);
   b.     FTIR testing machine ($22,000);

  c.  HPLC equipment ($50,000); and,

  d.  Miscellaneous labware.

48. On one occasion, Alam told Chen he needed $50,000 as a deposit on two capsule machines for May Labs, which she paid him, but he never delivered them to her.

49. On another occasion, Alam represented to Chen that he needed a $150,000 advance because he was going to an auction to buy used equipment for May Labs. Chen transferred Alam the money. In return, Alam delivered one "HPLC" machine to her, worth approximately $8,000. He never refunded the difference.

50. Chen asked for, but never received, original invoices for the equipment she purchased from Alam.

51. As a result, May Labs LLC never had, and still does not have, the necessary equipment to perform manufacturing.

52. Alam represented to Chen that he needed an apartment to stay in while he was working in Cherry Hill to set up the manufacturing business for her. Relying upon Alam's representations that he would help her start a manufacturing business, May Labs leased an apartment for $700/month in Stratford, New Jersey for Alam to use while he was working in Cherry Hill.

53. Alam also solicited personal loans from Chen, which she gave him and were written on May Lab's checking account. He has not paid back May Labs. Chen wrote checks to

Alam from May Labs totaling approximately $5,000, which were personal loans. That debt is still outstanding and is part of the damages Plaintiffs seek.

54. Additionally, instead of helping Chen obtain new customers as promised, Riddhi USA, Inc. stole existing customers from Willing's Group. As one example, from his time consulting at the Willing's Group facility, Alam knew Lag Global Trading was a Willing's Group customer. Lag Global Trading owed Willing's Group $15,000 for products already delivered. Alam went to the Lag Global Trading facility in person and persuaded Lag Global Trading to buy products from Riddhi USA, Inc. instead. As a result, Willing's Group lost Lag Global Trading as a customer and never received the $15,000 final payment it was owed.

55. Alam also stole Willing's Group clients GoldLife and Maxus Worldwide Nutrition.

56. Alam also took from the Cherry Hill facility tooling equipment that Willing's Group had purchased for May Labs. Specifically, Alam took "tooling kits" from Chen's facility to use at Riddhi USA, Inc. in his New York facility. Alam took the tooling kits, without authorization from Chen, so he could use them in his own business in New York.

57. Chen visited Alam's Riddhi USA, Inc. facility in New York on May 12, 2016 to retrieve the tooling kits Alam had taken. When she arrived she was let in by a worker. She found one tooling machine that she believed to be hers and put it in the trunk of her car.

58. When Alam arrived and learned that Chen had taken one of the tooling machines, he threatened to have her arrested. He called the police, who arrived shortly thereafter. When Chen showed Alam the machine was hers, he backed down on his threats to have her arrested

and told the police the matter was resolved. Alam then "found" another tooling machine at his facility that belonged to May Labs LLC and gave it to Chen before she left.

59. Alam also failed to provide adequate industry knowledge and in-person consulting as promised. When Alam did come to the Cherry Hill facility he was verbally abusive to Chen's employees.

60. Chen was justified in relying on Alam's misrepresentations because Chen and Alam had a professional relationship for several years before, Alam described himself to be very knowledgeable in the manufacturing industry, and gave Chen a list of the manufacturing equipment he would procure for May Labs. Chen believed Alam was able to obtain manufacturing equipment at a steeply discounted price because he was a distributor.

61. Alam intended that Chen rely on these representations so that he could use Chen's money to fund his own business, Riddhi USA, Inc. in New York.

62. Willing's Group Inc. and May Labs suffered a monetary loss of almost $600,000 and suffered lost profits because Chen was unable to use the equipment purchased.

WHEREFORE, Plaintiffs respectfully requests that this Honorable Court enter judgment in its favor and against M. Maimul Alam and Riddhi USA Inc. in an amount in excess of $75,000, as well as punitive damages, attorneys' fees, and any other relief deemed appropriate by the Court.

## COUNT II

## BREACH OF CONTRACT

63. The preceding and succeeding paragraphs are incorporated herein by reference as if set forth at length.

64. Chen agreed to give Alam money to purchase and deliver adequate equipment to start a manufacturing business, May Labs.

65. Chen's packaging facility, Willing's Group Inc., paid Riddhi USA, Inc. almost $600,000, including over $31,000 in commissions, to procure equipment for May Labs.

66. Despite the substantial sums paid, the equipment Alam delivered was not fit for the intended purpose of manufacturing high-quality nutritional supplements that could be produced and sold profitably.

67. Alam also failed to deliver $192,000 worth of equipment.

68. As a result, May Labs LLC never had, and still does not have, the necessary equipment to perform manufacturing. As a direct and proximate cause of Defendants' contract breaches, Willing's Group Inc. and May Labs suffered a monetary loss of almost $600,000 and suffered lost profits because Chen was unable to use any of the dilapidated equipment Alam purchased.

WHEREFORE, Plaintiffs respectfully requests that this Honorable Court enter judgment in its favor and against M. Maimul Alam and Riddhi USA Inc. in an amount in excess of $75,000, as well as any other relief deemed appropriate by the Court.

## COUNT III

**UNLAWFUL INTERFERENCE WITH A PROSPECTIVE ECONOMIC ADVANTAGE**

69. The preceding and succeeding paragraphs are incorporated herein by reference as if set forth at length.

70. Instead of helping Chen obtain new customers as promised, Riddhi USA, Inc. stole existing customers from Willing's Group. From his time consulting at the Willing's Group facility, Alam came to learn that Lag Global Trading was a Willing's Group customer. Lag Global Trading owed Willing's Group $15,000 for products already delivered. Alam went to the Lag Global Trading facility in person and persuaded Lag Global Trading to buy products from Riddhi USA, Inc. instead. As a result, Willing's Group lost Lag Global Trading as a customer and never received the $15,000 final payment it was owed.

71. Alam also stole Willing's Group clients GoldLife and Maxus Worldwide Nutrition.

72. May Labs and Willing's Group suffered a monetary loss of almost $600,000 and suffered lost profits because Chen was unable to use the equipment Alam purchased.

WHEREFORE, Plaintiffs respectfully requests that this Honorable Court enter judgment in its favor and against M. Maimul Alam and Riddhi USA Inc. in an amount in excess of $75,000, as well as any other relief deemed appropriate by the Court.

## COUNT IV

## UNJUST ENRICHMENT

73. The preceding and succeeding paragraphs are incorporated herein by reference as if set forth at length.

74. Willing's Group gave Riddhi USA, Inc. almost $600,000 including over $31,000 in commissions for procuring equipment. May Labs also rented Alam an apartment, at the rate of $700/month, and lent him $5,000 in personal loans, which have not been paid back.

75. Despite the substantial sums paid, the equipment Alam delivered was not fit for the intended purpose of manufacturing high-quality nutritional supplements that could be produced and sold profitably.

76. Alam failed to deliver $192,000 worth of equipment.

77. As a result, May Labs LLC never had, and still does not have, the necessary equipment to perform manufacturing.

78. Alam also failed to provide adequate industry knowledge and in-person consulting as promised.

79. Defendants' retention of Plaintiffs' money would be unjust and inequitable.

WHEREFORE, Plaintiffs respectfully requests that this Honorable Court enter judgment in its favor and against M. Maimul Alam and Riddhi USA Inc. in an amount in excess of $75,000, as well as any other relief deemed appropriate by the Court.


Dated:  October 17, 2016                MONTGOMERY, MCCRACKEN, WALKER & RHOADS, LLP


By:  s/*John J. Levy*
    John J. Levy (I.D. #037201984)
    LibertyView, Suite 600
    457 Haddonfield Road,
    Cherry Hill, New Jersey 08002
    (856) 488-7700
    (856) 488-7720 (facsimile)
    Jlevy@mmwr.com

    Attorneys for Plaintiffs, Willing's Group and
        May Labs LLC

## LOCAL RULE 11.2 CERTIFICATION

Pursuant to Local Rule 11.2, the undersigned hereby states on behalf of Plaintiffs Willing's Group Inc. and May Labs LLC, that the matter in controversy is not the subject of any other action pending in any other Court or pending arbitration proceeding to the best of this party's knowledge or belief, nor is any such other action or arbitration proceeding contemplated. However, James O. Guy, Esquire, counsel for the Defendants, represented to me in a telephone call on October 14, 2016, that a related action has been filed in state court in New York. I have no first hand-knowledge of this claim. Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.


October 17, 2016                    MONTGOMERY, MCCRACKEN, WALKER & RHOADS, LLP


                                    By:_____
                                        John J. Levy (I.D. #037201984)
                                        LibertyView, Suite 600
                                        457 Haddonfield Road,
                                        Cherry Hill, New Jersey 08002
                                        (856) 488-7700
                                        (856) 488-7720 (facsimile)
                                        jlevy@mmwr.com

                                        Attorneys for Plaintiffs, Willing's Group and
                                            May Labs LLC

MONTGOMERY, MCCRACKEN, WALKER & RHOADS, LLP
(A Limited Liability Partnership formed in Pennsylvania)
By: John J. Levy (037201984)
LibertyView, Suite 600
457 Haddonfield Road
Cherry Hill, New Jersey 08002
(856) 488-7700
ATTORNEYS FOR WILLING'S GROUP INC. and MAY LABS LLC

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| WILLING'S GROUP INC. and MAY LABS LLC, | : | Civil Action No. 16-4479 (NLH/KMW) |
| Plaintiffs, | : | |
| v. | : | |
| M. MAIMUL ALAM and RIDDHI USA, INC., | : | |
| Defendants. | : | **CERTIFICATE OF SERVICE** |

I, John J. Levy, hereby certify that on this date, I caused to be served a true and correct copy of the foregoing Amended Complaint by the Electronic Filing System on the following:

James Owen Guy, Esquire
323 Washington Street
Hoboken, New Jersey 07030

Dated: October 17, 2016          *s/John J. Levy*
                                  John J. Levy (037201984)
                                  LibertyView, Suite 600
                                  457 Haddonfield Road,
                                  Cherry Hill, New Jersey 08002
                                  (856) 488-7700
                                  (856) 488-7720 (facsimile)
                                  jlevy@mmwr.com

                                  Attorneys for Plaintiffs, Willing's Group and
                                  May Labs LLC